ANDERSON, Respondent, v. ANDERSON, Appellant.

*No. 674 (1974). Submitted on briefs May 5, 1976.— Decided June 2, 1976.*
(Also reported in 242 N. W. 2d 165.)

632

636

For the appellant the cause was submitted on the briefs of *Charles P. Dykman, Dykman Law Offices,* of Madison.

For the respondent the cause was submitted on the brief of *Hamilton & Mueller* of Dodgeville.

BEILFUSS, C. J.  The plaintiff, Kathryn M. Anderson, and the defendant, Arthur M. Anderson, were married on August 25, 1951. On February 18, 1974, the plaintiff was granted an absolute divorce on the grounds of cruel and inhuman treatment.

At the time of the trial the plaintiff-wife was fifty-five years old and the defendant-husband was forty-nine. The parties had been married for twenty-two years and had five children, three of whom were still residing at home. The oldest of the three was eighteen and a senior in high school. The other two were minors, ages thirteen and fifteen. Mrs. Anderson had been employed part-time as a bookkeeper for several years and earned between $85 and $90 a week. Mr. Anderson had held a number of jobs during the couple's marriage and was employed as a manager of a farm implement business at the time of the divorce. His net income from that job was $733.96 per month.

The major asset of the parties was a farm which had a value of $44,000 with the parties' equity fixed at $24,035. Their net worth was $35,604.32. Five acres of the farm, including the residence, was set aside and awarded to the

wife. The value of the five acres was $22,000. The balance of the land was awarded to the husband. The total amount the wife received in the division of estate was $23,675.50, but she was required to assume some bills and to give to the husband her note and real estate mortgage on the residence in the amount of $5,000 with interest at six percent payable in five years. Her net in the division was $18,431 and the husband's $17,173.32.

The wife was given the custody of the two minor children and awarded $100 per month alimony for a period of fifteen years and $200 per month support money.

The judgment also provided for a contribution by the husband of $300 for attorneys' fees, plus $150 previously awarded.

The first issue we reach is the wife's challenge to the husband's right to appeal.

At the time this divorce action was commenced the parties were vendors on a land contract with one Robert Bachner as the vendee. As a part of the property division portion of the divorce judgment the husband was awarded the full vendor's interest under that contract. The defendant was also ordered to assume and discharge certain liabilities of the parties. In order to fulfill those obligations he borrowed money from his father. The husband assigned his interest under the land contract to his father as security for that loan. The wife argues that this constitutes an acceptance of the benefits of the divorce judgment and that the defendant should therefore be held to have waived his right to appeal from that judgment.

As a general rule, one who accepts the benefits or fruits of an order or judgment may not maintain an appeal therefrom.[1] This rule has been held to apply to

---

[1] *Will of Hill* (1953), 264 Wis. 410, 59 N. W. 2d 437, 60 N. W. 2d 254; *Hanson v. Chicago & L. S. R. Co.* (1918), 167 Wis. 335, 167 N. W. 450.

the property settlement provisions of a divorce judgment.[2] However, certain exceptions to the rule have been recognized.

To preclude appeal by the acceptance of the benefits of a divorce judgment the acceptance of benefits must be of such a nature as to clearly indicate an intention to be bound by the divorce decree. Where, as here, the purpose of the appeal is to seek a more favorable award, the acceptance or use of that property actually awarded should not be held to constitute a waiver of the right to appeal.[3]

The principal issue before us is the husband's contention that the trial court erred in granting more than one-half of the family property to the wife.

The division of the marital estate in a divorce action is subject to review on the ground that it is excessive as to one party or the other. However, the division of property is a matter within the sound discretion of the trial court and will not be upset unless an abuse of discretion can be shown. The trial court's division must be upheld in the absence of some mistake or error respecting the facts upon which it rests or unless, under all the circumstances, the amount is either clearly excessive or inadequate.[4]

In *Lacey v. Lacey* (1970), 45 Wis. 2d 378, 173 N. W. 2d 142, this court concluded that the division of the prop-

[2] *See:* 4 Am. Jur. 2d, *Appeal and Error*, p. 754, sec. 259; Annot., *Spouse's Acceptance of Payments Under Alimony or Property Settlement or Child Support Provisions of Divorce Judgment as Precluding Appeal Therefrom*, 29 A. L. R. 3d 1184, 1206.

[3] *See: Harrold v. Harrold* (1950), 100 Cal. App. 2d 601, 224 Pac. 2d 66; *Carle v. Carle* (1950), 149 Tex. 469, 234 S. W. 2d 907, 234 S. W. 2d 1002, 235 S. W. 2d 924; *Walden v. Walden* (Ky. 1972), 486 S. W. 2d 57.

[4] *See: Husting v. Husting* (1972), 54 Wis. 2d 87, 194 N. W. 2d 801; *Balaam v. Balaam* (1971), 52 Wis. 2d 20, 187 N. W. 2d 867; *Parsons v. Parsons* (1975), 68 Wis. 2d 744, 229 N. W. 2d 629.

erty of divorced parties rests on the concept of a marriage as a shared enterprise or joint undertaking. The court recognized that the contributions of the parties to the marriage and to the accumulation of the property differs from case to case, making it extremely difficult to establish any fixed rules for the division of the property. However, the court reiterated some of the factors which a trial court, in exercising its discretion, should consider relevant to the property division question. They include: (1) The length of the marriage; (2) the age and health of the parties; (3) the ability of the parties to support themselves; (4) the liability of the parties for debts or for the support of minor children; (5) misconduct, if any, on the part of the parties; (6) whether the property division is in lieu of or in addition to alimony; (7) whether the property was acquired during the marriage or brought to it; (8) the amount of the spouses' separate estates; (9) the necessity of sequestering property to care for the needs of minor children.

The following factors have been considered particularly relevant in determining whether the trial court has erred in awarding a substantial share (generally considered to be more than one-third) of the marital estate to the wife: (1) A long period of marriage; (2) complete lack of any separate estate in the wife coupled with her inability to support herself; (3) the misconduct of the husband contributing to the breakup of the marriage; and (4) amount of permanent alimony awarded to the wife.[5]

In this case the trial court concluded that "each of the parties should receive one-half of the net estate, or an amount as close to that figure as is reasonably possible." That decision, the trial court stated, was based upon a

---

[5] See: *Kronforst v. Kronforst* (1963), 21 Wis. 2d 54, 123 N. W. 2d 528; *Wahl v. Wahl* (1968), 39 Wis. 2d 510, 159 N. W. 2d 651; *Sholund v. Sholund* (1967), 34 Wis. 2d 122, 148 N. W. 2d 726; *Radandt v. Radandt* (1966), 30 Wis. 2d 108, 140 N. W. 2d 293.

consideration of the factors set forth in *Lacey, supra.* Specifically, the trial court noted that the parties had been married over twenty-two years. It also took note of the fact that both parties were in good health and that the plaintiff-wife was employed at a job in which her earnings had increased each year. However, the court stated:

"In allowing the plaintiff a division of the estate of approximately 50%, considered liberal by our Supreme Court, this Court has taken into consideration the plaintiff's age of 55 years, the probability that she has only about 10 years during which she will be able to support herself, and the fact that she has no separate estate of her own. Also considered was the fact that she has worked consistently since 1957 and contributed all of her earnings to the family unit."

The trial court further considered the fact that the divorce had been granted on the ground of cruel and inhuman treatment by the husband. The court noted that neither party had brought assets to the marriage of more than a nominal value and that all the marital property was acquired through a joint effort of the parties and a pooling of income. Finally, the court recognized that the husband had contributed more in dollar amounts than the wife, but noted that the wife's "efforts in raising a family of five children and keeping a household equalize the defendant's financial efforts."

The husband argues on appeal that the court failed to effectuate its intention of dividing the property equally. He points out that the wife received $23,431 in assets less a note for $5,000 payable to him in five years and bearing interest at only six percent per annum. He contends that the note was an inadequate method of equalizing the division of assets because "$5,000 today is worth considerably more than $5,000 and six percent interest per year five years from now," and because the device re-

sulted in the award of about 51 percent of the estate to the wife.

It is true that the trial court's division did not result in an award of precisely 50 percent of the marital property of each party. However, the parties' assets were not liquid, making a precise division difficult. Furthermore, the trial court was of the opinion that the requirement that the wife pay interest on the $5,000 note would result in an approximate equalization. Under these circumstances there was no abuse of discretion in employing the promissory note device to effectuate the intended division.

The husband also contends that the trial court's equal division of the property must be set aside in light of its concurrent decision to award permanent alimony to the plaintiff in the sum of $100.

It is true that the amount of permanent alimony is a factor to be considered in making a division of property. In many cases, a substantial award to the wife is made in lieu of alimony. In the *Kronforst Case, supra,* this court characterized an award of permanent alimony in the amount of $100 per month as "substantial."

However, the amount of alimony is only one of many factors to be considered in the division of property. Clearly, an award of $100 per month is not as "substantial" an award today as it was in 1963 when *Kronforst* was decided. While the alimony award cannot be considered low, it is not so substantial so as to require a lesser award of property to the wife under the circumstances of this case.

The defendant alleges no error or mistake of fact on the part of the trial court which would require a finding that the trial court abused its discretion with respect to the division of property. The court's decision demonstrates a consideration of all the factors which are con-

sidered relevant to the division of marital assets. Under all the circumstances of this case, therefore, the division of property which resulted in an award of roughly 50 percent to the plaintiff-wife was not excessive.

The defendant-husband next contends that the trial court erred in ordering monthly payments of alimony and child support in the amounts of $100 and $200, respectively.

The award of alimony and support is, like the division of property, a matter left to the discretion of the trial court.[6] With respect to the award of alimony, this court has stated:

"Upon termination of the marriage relationship, a husband has a continuing obligation to support his wife at the social and economic status to which she had become accustomed during the marriage. Although the division of an estate pursuant to sec. 247.26, Stats., is influenced to a degree by the conduct of the parties during the marriage, and by the wife's direct and indirect contributions to the estate during the marital relationship, the court may also consider a wife's future needs, and her ability to satisfy them from her special estate, or from her potential earning power when making a division pursuant to sec. 247.26. Although analytically severable for some purposes, considering that a division of estate reflects a judgment as to the wife's material and nonmaterial contributions during marriage, both alimony payments and division of the estate are means whereby a husband meets the obligation to support his wife in the status to which she was accustomed. Therefore, the same factors to be considered in making a division of estate may be considered to determine the amount of an alimony payment." *Tonjes v. Tonjes* (1964), 24 Wis. 2d 120, 125, 128 N. W. 2d 446.

Both alimony and support payments are fixed on the basis of the needs of the wife and children and the ability

[6] *Balaam v. Balaam, supra; Heiting v. Heiting* (1974), 64 Wis. 2d 110, 218 N. W. 2d 334.

of the husband to pay. These needs are ordinarily established by a consideration of the wife's assets and income, her special needs, the age and health of both the wife and children and their customary station in life. The ability of the husband to pay is usually determined by his income, assets and debts as well as his age and health. These determinations are to be made upon the basis of the circumstances existing at the time of the divorce.[7]

The wife testified at the trial that her monthly expenses for a family of four (including one daughter who was eighteen years old at the time of trial) were $650.

The plaintiff testified that she was employed on a part-time basis for $3.70 an hour and that her take-home pay was between $85 and $90 per week. The defendant's net income was $733.96 per month. No testimony was presented at the trial concerning the defendant's expenses.

On the basis of this testimony the trial court ordered the defendant to pay $200 per month support payments for the two minor children and $100 per month alimony. With respect to the alimony, the court noted:

"Obviously, it is seldom that a divorce results in a situation where the husband and wife are able to operate at the same economic scale as they did prior to the divorce. This case is no exception. The breakup of this marriage will result in a financial hardship to both parties. All that the Court can do is attempt to adjust the assets available to lessen the blow as much as possible."

The husband contends that in making the alimony and support awards the trial court failed to adequately consider the fact that the plaintiff's estimation of expenses included those incurred with respect to a child of the

[7] *See: Miner v. Miner* (1960), 10 Wis. 2d 438, 103 N. W. 2d 4; *Jordan v. Jordan* (1969), 44 Wis. 2d 471, 171 N. W. 2d 385.

parties who was then eighteen years old and as to whom he owed no obligation of support.[8] He also points out that he was ordered to assure the FHA obligation as part of the property division. He also argues that the court failed to adequately consider the wife's potential ability to increase her earnings and the concurrent property division.

The trial court's decision clearly demonstrates that it was cognizant of the fact that the defendant-husband could not be ordered to support an adult child. This court has never held that an award for alimony or support which exceeds the itemized expenses demonstrates, *per se,* an abuse of discretion. Such an award must be considered in light of the accustomed standard of living and the defendant's ability to pay.[9] There is no evidence in the trial record to demonstrate that the award made by the court was beyond the defendant's abilities.

The record does show that the wife's earnings had steadily increased during her years of employment. It is also true that the trial court awarded about half of the marital estate to the wife and that the substantial property award must be considered in fixing an award of alimony. However, none of the assets awarded to the plaintiff were liquid. Nor were any capable of producing income which would supplement her earnings. Considering all relevant factors together, we conclude there is nothing to warrant a finding that the trial court clearly abused its discretion in making the award it did for alimony and support.

---

[8] *See: Bliwas v. Bliwas* (1970), 47 Wis. 2d 635, 640, 641, 178 N. W. 2d 35; *Schmitz v. Schmitz* (1975), 70 Wis. 2d 882, 236 N. W. 2d 657; *O'Neill v. O'Neill* (1962), 17 Wis. 2d 406, 117 N. W. 2d 267.

[9] *See: Ausman v. Ausman* (1966), 31 Wis. 2d 79, 141 N. W. 2d 869.

The husband contends the trial court erred in requiring him to contribute the amount of $450 to the plaintiff's attorneys' fees.

The allowance of attorney's fees in a divorce action is a matter resting within the discretion of the trial court and, unless an abuse of discretion can be shown, this court will affirm the determination of the trial court.[10] An abuse of discretion may arise when there is a failure to consider all of the relevant factors and principles of law applicable to a particular situation or where, under the circumstances of a particular case, the award is considered either excessive or inadequate. *Hennen v. Hennen, supra.* In the *Hennen Case,* at pages 608, 609, this court outlined the principles to be considered by a trial court in ordering the husband to contribute to his wife's attorney's fees in a divorce action:

"In order for a court to direct the husband to contribute toward his wife's attorney's fees in a divorce action, there must be established a need on the part of the wife and an ability to pay on the part of the husband. *Balaam v. Balaam* (1971), 52 Wis. 2d 20, 32, 187 N. W. 2d 867:

" '. . . Where the wife is able to pay her own attorney out of income or assets, or where the husband does not have the ability to pay such contribution, there is no basis in law or in equity for requiring a husband to contribute towards payment of a fee owed by his wife to her counsel.' *Hirth v. Hirth* (1970), 48 Wis. 2d 491, 497, 180 N. W. 2d 601; *Dees v. Dees* (1969), 41 Wis. 2d 435, 164 N. W. 2d 282. In the *Hirth Case,* this court detailed factors which are material in determining the needs of the wife and the husband's ability to pay. Among the factors which necessarily must be considered are the assets, income and liabilities of both parties."

[10] *See: Tesch v. Tesch* (1974), 63 Wis. 2d 320, 217 N. W. 2d 647; *Hennen v. Hennen* (1972), 53 Wis. 2d 600, 193 N. W. 2d 717; *Williams v. Williams* (1969), 44 Wis. 2d 651, 171 N. W. 2d 902; *Spheeris v. Spheeris* (1967), 37 Wis. 2d 497, 155 N. W. 2d 130.

The husband argues that the order to contribute to the plaintiff's attorneys' fees must be set aside because there is no demonstrated need on the part of the plaintiff for such assistance. Further, the husband points out, the trial court made no finding as to the total fees to be paid, thereby foreclosing a determination of whether the amount ordered as contribution was reasonable.

In ordering the contribution the trial court made no specific finding with respect to either the wife's need or the husband's ability to pay. Furthermore, there is nothing in the record to indicate what the wife's total attorneys' fees were.

It is better practice in fixing contribution toward attorneys' fees to make a specific finding of the former wife's need and the divorced husband's ability to pay. Here, no such finding was made.

A more serious problem is presented, however, with respect to the absence in the record of any indication as to the total amount of the wife's attorneys' fees. This court has indicated that in determining the amount of the divorced husband's contribution it is first necessary to establish the reasonableness of the total fee. *See: Hennen v. Hennen, supra; Tesch v. Tesch, supra.* Such a determination is desirable not only to determine whether the fee is reasonable but to provide guidance in establishing what portion of that fee the divorced husband should reasonably be required to pay.

In the absence of some indication as to what the total fee is, this court is left to surmise as to whether a proper balance was struck between the former wife's needs and the divorced husband's ability to pay. Under these circumstances meaningful review, even for abuse of discretion, is difficult if not impossible. We conclude that that part of the divorce judgment which orders the defendant-husband to contribute $300, in addition to the $150 previously contributed, for the plaintiff's attorneys'

fees must be set aside and the matter remanded for the appropriate findings.

On August 20, 1974, the husband was ordered to show cause why he should not be held in contempt of court for his failure to make the alimony and support money payments as ordered. At the hearing on September 4th the defendant was found to be $975 in arrears on his payments of alimony and support. The trial court found him in contempt of court and sentenced him to thirty days in the Iowa county jail. The sentence was stayed for a period of three months during which time he was given an opportunity to purge himself of the contempt by payment of the arrearage in full.

The defendant argues that the trial court erred in finding him in contempt. This court has repeatedly held that a person may be held in contempt of court for his failure to pay money required to be paid by a court order or judgment only where that failure is wilful and not the result of his inability to pay. In *O'Connor v. O'Connor* (1970), 48 Wis. 2d 535, 180 N. W. 2d 735, this court stated at page 542:

". . . it has long been settled in Wisconsin that a person cannot be held in contempt of court for the failure to pay money unless the refusal is willful and contemptuous and not a result of his inability to pay. This was so held in a divorce case in which we said, 'Imprisonment [on contempt] should not be ordered when it is made to appear that the default is the result of an inability to pay.' *Howard v. Howard* (1955), 269 Wis. 334, 337, 69 N. W. 2d 493. *See also: Staples v. Staples* (1894), 87 Wis. 592, 596, 58 N. W. 1036; and *Warren v. Rosenberg* (1896), 94 Wis. 523, 69 N. W. 339. The essential finding in such a contempt must be that the defendant is able to pay or should be able to pay if he can work and will not and the refusal to pay is willful and with intent to avoid payment."

At the hearing on the order to show cause for contempt the defendant testified that he was financially unable to

make the full payments of alimony and support money ordered by the judgment of divorce. At the time of the divorce the defendant had been employed by a farm implement business with a net income of $733.96 per month. His employment with that business was terminated on March 15, although he received payment for vacation time through April 7. He stated he was asked to resign because business was bad.

The defendant did not immediately apply for unemployment compensation because there were "two or three other jobs that I thought I was getting right away, but they didn't develop." The defendant eventually found employment, through a state employment service, with a lumber company in Richland Center. That employment commenced on June 24, 1974, and paid a net of $570 per month. Between April 7 and June 24 the defendant received $630 in unemployment compensation. The defendant itemized his personal expenses which totaled approximately $548 per month, excluding the amount of $300 for alimony and support.

The defendant testified that between the time of the divorce judgment and the date of the hearing he had paid $1,125 in alimony and support. His total income during that period, including wages from both jobs and unemployment, was $2,754.92. The defendant stated that he had used some of the money he had been granted in the property division to help meet his expenses. He further stated that he had paid certain expenses which he was required by the divorce judgment to assume.

In holding the defendant in contempt the trial court made no finding that the defendant was financially able to make the full alimony and support payments but that he had refused to do so. Nor did the court find that his inability to pay was the result of any wilful design on his part to avoid those payments. Rather, the court specifically found that the defendant's income had been

"reduced substantially." The court further determined that the list of living expenses submitted by the defendant was not unreasonable. Under these circumstances we believe the trial court erred in finding the defendant in contempt. The mere fact that an arrearage had accrued as to the alimony and support payments required by the divorce judgment is insufficient to support a finding of contempt.

In making its finding of contempt the court noted that the defendant would be receiving payment from a canning company for crops grown on the farmland he had received as a part of the property division. In addition, the court noted, a payment was due in January of 1975 on the land contract in which he had been awarded the vendor's interest. Even assuming that such payments would be forthcoming, however, they could have no bearing on the issue of the defendant's past ability to make the full alimony and support payments. The order finding the defendant in contempt must be set aside.

The defendant also contends the trial court should have ordered a reduction in the amounts to be paid. He argues that the decrease in his income, coupled with other factors, constitutes a substantial change in circumstances warranting such a modification.

The court may modify the provisions of a divorce judgment relating to alimony and support money where there has been a substantial or material change in the circumstances of the parties or the children.[11] However, it is the obligation of the party who alleges changed circumstances to affirmatively petition the court for an order modifying those payments. *See:* sec. 247.25, Stats.

The record in this case does not contain a petition by the defendant-husband addressed to the trial court for

[11] *See: Severson v. Severson* (1976), 71 Wis. 2d 382, 238 N. W. 2d 116; *Thies v. MacDonald* (1971), 51 Wis. 2d 296, 187 N. W. 2d 186; *Miner v. Miner, supra.*

a modification of the alimony and support payments. Nor is there anything in the transcript of the contempt hearing to indicate that he was seeking such a modification. The testimony presented at that hearing by the defendant as to his decreased financial capabilities was directed at justifying his failure to make the payments rather than supporting any request for modification. Under these circumstances the trial court did not abuse its discretion by failing to order such a modification.

Following the trial court's order finding the defendant in contempt, the defendant petitioned this court for a stay of the contempt order and for a reduction in the alimony and support payments pending a decision on the merits of this appeal. This court ordered the stay but found that it was "not appropriate to reach the question of reduction of alimony and support payments prior to the decision of this case on the merits." The question thus presented is whether this court should now order such a reduction. We conclude we should not.

The testimony at the hearing on the order to show cause indicated, and the trial court specifically found, that the defendant's income had decreased substantially from the time the divorce judgment had been entered. It was also found that the plaintiff's income had increased from between $85 and $90 per week to about $100 per week. The defendant also testified that he had been required to invade the assets which had been awarded to him as a part of the property division in an effort to meet his alimony and support obligations. The trial court indicated that it felt this was unfortunate but, nevertheless, felt that it was necessary and would have to continue under the circumstances.

All of these factors are relevant to the determination of whether the court's original alimony and support

award should be modified.[12] However, this court should not now order a modification. That function should be performed by the trial court upon a reconsideration of the circumstances of the parties as they then exist. A substantial period of time has elapsed between the hearing on the order to show cause for contempt and the decision on this appeal. The circumstances of the parties may have changed during that period. The trial court, upon petition and hearing all of the evidence relating to the respective needs and abilities of the parties, can make a better determination on the issue of modification than this court can upon the information before us.

The final issue on this appeal concerns the trial court's order, dated March 18, 1975, requiring the defendant-husband to pay to the clerk of court the amount of the 1975 installment on the Bachner land contract awarded to him pending the determination of the appeal.

The defendant-husband contends on appeal that the purpose of the order was to provide sums of money which would satisfy his alimony and support obligations. He points out that he had assigned his interest in the contract to his father as security on a loan which he used to pay certain obligations he was required to assume as a part of the divorce judgment. He argues that the trial court abused its discretion by interfering with his personal business and financial matters.

From a review of the court's order and the transcript of the hearing on the order to show cause which preceded that order, it is apparent that the court did not order the payment of the sum in question in an effort to satisfy the arrearages in the defendant's alimony and support obligations. The order and those proceedings clearly show that the court was concerned with the possibility

---

[12] *See: Radant v. Radant, supra; Thies v. MacDonald, supra; Stowe v. Stowe* (1966), 30 Wis. 2d 565, 141 N. W. 2d 228.

that its judgment of divorce, including the property division, would be reversed on appeal. The court ordered the payment in question to preserve the status quo pending the appeal. It was the trial court's belief that because the defendant had acquired his interest in the land contract solely as a result of the property division and there was a possibility that that division might be set aside on appeal, it was necessary to order the payment to protect the interests of the plaintiff-wife in the land contract.

The trial court did not abuse its discretion in entering the order. The defendant's notice of appeal was from the entire judgment of divorce and the trial court was justified in considering the possibility that a new division of property would be ordered. Under those circumstances it would be difficult, if not impossible, to redistribute property in which a third party had acquired an interest. However, because we affirm the judgment insofar as the division of estate is concerned, the trial court should now enter an order directing that the clerk of court pay the proceeds from the land contract to the defendant-husband.

*By the Court.*—That part of the judgment awarding the plaintiff a contribution to her attorneys' fees is reversed and remanded for further proceedings not inconsistent with this opinion. In all other respects the judgment is affirmed. The order of September 4, 1974, finding the defendant in contempt of court is reversed and set aside. The order of March 18, 1975, requiring the defendant to deposit the proceeds of the land contract with the clerk of court is to be vacated upon remittitur. No costs to be awarded.